IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

In re:                                  :
                                        :
ABISLAIMAN E HIJOS, CORP.,              :      Case No. 03-13726 (GAC)
d/b/a Joyeria Rivera,                   :
                                        :
        Debtor                          :      Chapter 11
_____         :
                                        FILED & ENTERED
ABISLAIMAN E HIJOS, CORP.               :
d/b/a Joyeria Rivera,                   JUL 0 5 2005
                                        :
        Plaintiff                       CLERK
                                        U.S. BANKRUPTCY COURT
                                        SAN JUAN, PUERTO RICO
        v.                              :      Adv. No. 03-00191
                                        :
DEPARTMENT OF THE TREASURY FOR          :
THE COMMONWEALTH OF PUERTO RICO,        :
et al,                                  :
                                        :
        Defendants                      :
_____         :


## DECISION AND ORDER

The debtor/plaintiff, Abislaiman e Hijos, Corp. d/b/a Joyeria Riviera ("Abislaiman") operates two fine jewelry and watch stores, one located in Old San Juan and one in the El Conquistador Hotel in Fajardo.  On December 18, 2003, at approximately 11:00 a.m., the Puerto Rico Department of the Treasury for the Commonwealth of Puerto Rico ("Hacienda") served notices of attachment against jewelry and watches in both of Abislaiman's stores for failure to pay excise taxes.  On the same date, at 3:41 p.m., Abislaiman filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code.  Abislaiman filed this adversary proceeding on

1

December 19, 2003, alleging that the defendants, Hacienda and various individuals employed by Hacienda, violated the automatic stay of 11 U.S.C. § 362(a). Abislaiman seeks damages pursuant to 11 U.S.C. § 105(a) and turnover of property of the estate pursuant to 11 U.S.C. §§ 542(a), 543(a), 547(b) or 549 and 42 U.S.C. § 1983.

Abislaiman's complaint alleges that Hacienda closed Abislaiman's jewelry stores after the filing of the bankruptcy petition and attempted to attach its jewelry and watches inventory post-petition. Abislaiman contends that the attachment was not completed prior to the filing of the bankruptcy petition, but argues that if it were, it would be subject to avoidance and turnover. Abislaiman also argues that Hacienda violated its constitutional right to due process by attaching its property without a hearing. Moreover, Abislaiman complains that the notices of attachment were addressed to the d/b/a, Joyeria Riviera, rather than to the corporate entity.

The Court held a telephone conference at 5:00 p.m. on Thursday, December 18, 2003. At the hearing, the court allowed Hacienda to continue the inventory at Abislaiman's stores and ordered that all items remain in the sealed vault inside the jewelry stores. The Court held a second hearing on Friday, December 19, 2003. The Court entered an order allowing Abislaiman to operate, but requiring it to provide adequate assurance to Hacienda in the form of $500,000.00 cost value in jewelry pieces.

The Court held two further hearings on Saturday, December 20, 2003 and on December 24, 2003, and reaffirmed the determination as to adequate assurance.

Hacienda filed a motion to dismiss the complaint and/or motion for summary judgment, alleging that the attachment was executed prepetition, at 11:10 a.m. on the petition date, and therefore the attachment did not violate the automatic stay (dkt. #49). Hacienda also contends that the attachment was not a preference since Abislaiman was not insolvent when the attachment was perfected. Finally, Hacienda argues that it is entitled to sovereign immunity and that the individual employees are entitled to qualified immunity.

Abislaiman opposed the motion to dismiss (dkt. #56). Abislaiman reiterates the allegations of its complaint, emphasizing that Hacienda's attempted attachment came just fourteen days after its final notice of tax deficiency, which granted Abislaiman thirty days to challenge the determination in court, subject to the posting of a bond. Abislaiman does not deny that it did not post a bond. Abislaiman argues that the attachment was not perfected at the time of filing, because Hacienda was still in the process of cataloging the jewelry. Moreover, Abislaiman claims that the jewelry stores were not closed with consent. Abislaiman also contends that Hacienda waived its sovereign immunity when it filed a proof of claim in this case and that the individual defendants

are not entitled to qualified immunity.

Background of Tax Assessment and Attachment

On February 19, 2003, Hacienda sent a request for information, addressed to Joyeria Rivera, Abislaiman E Hijos Corp. and Julio Abislaiman, as president. The request referred to Joyeria Riviera as the taxpayer and listed the account number as 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. The request referred to years 2000, 2001 and 2002 and required production of monthly excise tax returns, evidence of payments of excise taxes and evidence of jewelry license. The request was signed as received by "Julio Abislaiman" on February 25, 2003.

On October 21, 2003, Hacienda sent deficiency notices, referred to by the parties as "Jeopardy Assessments," addressed to Joyeria Rivera Inc. with account number 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. The notices were for excise taxes for the years 2000, 2001 and 2002. The notices granted thirty days to request reconsideration. On the same date, notices were sent indicating that the collection of the assessed amounts could be postponed by posting a bond, within ten days from the date of notice, for the amount of the assessed deficiencies.

On December 4, 2003, Hacienda issued a notice of final decision on deficiency, addressed to Joyeria Riviera, Inc., account number 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, in the total amount of $1,438,738.71. The notice granted thirty days to file a complaint in the court of first instance of Puerto Rico, subject to the posting of a bond in

the amount of $1,582,600.00. This notice was sent by certified mail and received on December 8, 2003.

On December 18, 2003, Hacienda prepared various notices of attachment for personal property held at the Old San Juan store, which include certificates of service, signed by a collector for Hacienda and "Julio Abislaiman," as president-owner of Joyeria Rivera e Hijos, with account number 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. Other notices of attachment were served at the El Conquistador store, addressed to Joyeria Riviera e Hijos, and signed by a collector for Hacienda and Mario Gonzalez Chamorro, as Manager. By noon on December 18, 2003, both of the jewelry stores were closed and representatives of Hacienda were present in the stores, photographing and making an inventory of the jewelry and watches.

After the filing of the bankruptcy petition, Abislaiman produced the notice of filing and demanded that Hacienda discontinue the attachment. Hacienda's employees continued the physical inventory. At the hearing held before this Court on the date of the bankruptcy filing, the Court allowed Hacienda to complete the physical inventory and thereafter allowed Hacienda to take physical possession of $500,000.00 in cost value of jewelry pieces as adequate protection.

Standard for Dismissal

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), made applicable by Fed. R. Bankr. P. 7012(b), the Court

5

"must accept the allegations of the complaint as true, and if, under any theory, the allegations are sufficient to state a cause of action in accordance with the law, [it] must deny the motion to dismiss." Vartanian v. Monsanto Co., 14 F.3d 697, 700 (1st Cir. 1994). A Rule 12(b)(6) motion to dismiss admits the well-pleaded material allegations of the complaint, but denies their legal sufficiency. The motion cannot be granted unless it appears certain that the plaintiff would not be entitled to relief under any facts the plaintiff could prove in support of its claim, taking all of the allegations of the complaint as true, viewing them in their most favorable light, and giving the plaintiff the benefit of all inferences which fairly may be drawn therefrom. In re Voltolini, 48 B.R. 199, 200-01 (D. Ma. 1985).

> If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed. R. Civ. Pro. 12(c).

As the First Circuit Court of Appeals has stated,:

> conversion of a motion for judgment on the pleadings into one for summary judgment should only occur after the parties have been offered a reasonable opportunity to present pertinent summary judgment materials. Fed. R. Civ. P. 12(c). Whether the parties had an opportunity to respond necessarily turns on the way in which the particular case under consideration has unfolded. See Whiting v. Maiolini, 921 F.2d 5, 6 (1st Cir. 1990). Thus, we have disfavored conversion when (1) the motion comes quickly after the complaint was filed, (2)

> discovery is in its infancy and the nonmovant is limited in obtaining and submitting evidence to counter the motion, or (3) the nonmovant does not have reasonable notice that a conversion might occur.

Rubert-Torres v. Hospital San Pablo, Inc., 205 F.3d 472, 475 (1st Cir. 2000).

In this case, these considerations are not present. Hacienda had answered the complaint and subsequently filed the motion to dismiss almost five months after the complaint was filed. There has been some discovery and Abislaiman was on explicit notice that Hacienda was seeking dismissal or summary judgment. Moreover, both parties have submitted exhibits to their pleadings, and neither party has objected to their inclusion. Thus, the Court will treat Hacienda's motion as a motion for summary judgment.

Standard for Summary Judgment

Hacienda is entitled to summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056. See also Celotex Corp. v. Catrett, 477 U.S. 317, 322, (1986). Summary judgment cannot be granted if there are issues of material fact. A material issue is one that affects the outcome of the litigation. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court should also draw all reasonable inferences from the facts in the manner most favorable to the

7

nonmovant. <u>Desmond v. Varrasso (In re Varrasso)</u>, 37 F.3d 760, 763 (1st Cir. 1994); <u>Piccicuto v. Dwyer</u>, 39 F.3d 37, 40 (1st Cir. 1994).

<u>Sovereign Immunity</u>

The Eleventh Amendment to the U.S. Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." This Amendment has also been interpreted to bar a suit in federal court against a State, by a citizen of the State. See <u>Hans v. Louisiana</u>, 134 U.S. 1 (1890). Historically, pursuant to the prohibition against suit found in the Eleventh Amendment, a state could only be sued in federal court with its consent. <u>Ford Motor Co. v. Department of Treasury of Indiana</u>, 323 U.S. 459 (1945).

Notwithstanding the Eleventh Amendment's prohibition, the Bankruptcy Code provides that "[a] governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose." 11 U.S.C. § 106(b). This subsection conditionally abrogates a State's Eleventh Amendment right to sovereign immunity when the State has filed a proof of claim in the

8

bankruptcy case and the claim against the State involves the same transaction or occurrence that is the subject of the proof of claim by the State. The First Circuit Court of Appeals has concluded that this section is constitutional and that the Commonwealth waives its Eleventh Amendment immunity by filing a proof of claim availing itself of the jurisdiction of the federal court. Arecibo Cmty. Health Care, Inc. v. Commonwealth of Puerto Rico, 270 F.3d 17 (1st Cir. 2001).

Hacienda claims that it is entitled to Eleventh Amendment sovereign immunity. Hacienda's argument, however, which it advanced in its motion to dismiss, was predicated on the fact that it had not filed a proof of claim prior to the filing of the motion to dismiss. Thereafter, on June 15, 2004, Hacienda filed a proof of claim in the amount of $6,518,382.73, claim #9, which it subsequently amended twice. Hacienda presently claims the amount of $6,717,426.76.

The Court concludes that Abislaiman's claim against Hacienda involves the same transaction or occurrence that is the subject of the Hacienda's proof of claim. Both Abislaiman's claims against Hacienda and Hacienda's proof of claim relate to Hacienda's tax assessment and attachment. Therefore, the Court concludes that sovereign immunity is not a defense available to Hacienda.

Hacienda's Use of D/B/A

The Court concludes that Hacienda's use of Abislaiman's d/b/a

in the notices does not defeat the attachment. The Court notes that Abislaiman itself identifies itself using the d/b/a in its balance sheets, which it attached to demonstrate insolvency. Moreover, the first notice sent by Hacienda included the names of the corporation, the d/b/a and the principal and used the corporation's tax identification number of 66-023-8588. While the subsequent notices were addressed to the d/b/a, they clearly included the same identification number. Abislaiman can claim no confusion as to the entity being addressed by Hacienda. Moreover, any potential claim by Abislaiman would require it to demonstrate wrongfulness i.e. that Hacienda had no cause of action against Abislaiman. See 36 Am. Jur. 2d *Proof of Facts* § 4. Abislaiman itself scheduled Hacienda as a creditor in an unknown amount for excise and sales taxes for the years 2000, 2001 and 2002. Thus, Abislaiman can not claim that Hacienda did not have a cause of action against it.

## Jeopardy Assessment

The Laws of Puerto Rico provide that "[i]f the Secretary [of Hacienda] believes that the assessment or collection of a deficiency will be jeopardized by delay he shall immediately assess such deficiency . . ." 13 L.P.R.A. § 8023(a).

Hacienda claims that it made the Jeopardy Assessments because Abislaiman failed to file tax returns, pay excise taxes, as well as produce the licenses and bond required as a withholding agent.

10

Abislaiman argues that the Jeopardy Assessments were issued in an unreasonable, arbitrary and capricious manner.

Abislaiman cites to federal standards regarding the issuance of jeopardy assessments. In reviewing the reasonableness of the assessment, the government bears the burden of proving the reasonableness of the assessment. <u>Varjabedian v. U.S.</u>, 339 F.Supp.2d 140, 143 (D.Mass. 2004). Courts have held that a jeopardy assessment is reasonable "so long as the decision to impose it falls between 'something more than "not arbitrary and capricious" and something less than "supported by substantial evidence."'" <u>Olbres v. I.R.S.</u>, 837 F.Supp. 20, 21 (D.N.H. 1993). See also <u>Varjabedian v. U.S.</u>, 339 F.Supp.2d at 144. The court in <u>Olbres</u> stated that:

A jeopardy assessment is appropriate if:

> 1) the taxpayer is or appears to be designing quickly to depart from the United States to conceal himself;
> 2) the taxpayer is or appears to be designing quickly to place his property beyond the reach of the government by removing it from the United States, or by concealing it, or by transferring it to another person, or by dissipating it; or
> 3) the taxpayer's financial solvency appears to be imperiled.

<u>Olbres v. I.R.S.</u>, 837 F.Supp. at 21.

Hacienda has not alleged that the principal of Abislaiman was designing to depart Puerto Rico nor that he was designing to place the business property beyond the reach of Hacienda. As to the final criteria, Hacienda has argued the contrary with respect to

11

the preference issue. Hacienda contends that Abislaiman is solvent. Thus, the Court can not determine from the pleadings whether the attachment was unlawful or whether it violated Abislaiman's constitutional rights because there is very little information to make a determination as to the reasonableness of the Jeopardy Assessments.

Qualified Immunity

Qualified immunity is an affirmative defense and Hacienda bears the burden of proving that it applies. Dimarco-Zappa v. Cabanillas, 238 F.3d 25, 35 (1st Cir. 2001). The First Circuit Court of Appeals employs a three-part test to determine whether a public official is entitled to qualified immunity: "(1) whether plaintiff's allegations, if true, establish a constitutional violation; (2) whether that right was clearly established at the time of the alleged violation; and (3) whether a similarly situated reasonable official would have understood that the challenged action violated the constitutional right at issue." Mihos v. Swift 358 F.3d 91, 102 (1st Cir. 2004).

Abislaiman argues that its right to due process was violated because it claims that Hacienda issued the Jeopardy Assessments without a hearing and in an unreasonable, arbitrary and capricious manner. After the issuance of the Jeopardy Assessments, Hacienda served the notices of attachment and closed Abislaiman's stores.

If Abislaiman's allegations are true, they may prove the

12

violation of a constitutional right that was clearly established at the time of the alleged violation. The Court concludes that the defense of qualified immunity may only be available to the individual defendants if there was a reasonable basis for the Jeopardy Assessments or if they can show that similarly situated reasonable officials would not have understood that the challenged action violated the constitutional right at issue. Thus, qualified immunity can not be determined because as the Court previously concluded, based on the information provided, the Court can not determine the reasonableness of the Jeopardy Assessments.

Attachment and Automatic stay

The Laws of Puerto Rico provide for attachment and sale of property for failure or refusal to pay taxes. See 13 L.P.R.A. § 8150. With respect to the procedure for attachment of real and personal property, the Laws provide that an "attachment shall be enforceable as soon as notice shall have been served by leaving a copy thereof with the debtor or any member of his family in charge of said property." 13 L.P.R.A. § 8151. The Laws further provide that "[a]s soon as the attachment is served as above, the collector or agent is authorized to seize the attached property, or close the business or property, if he believes it is necessary." Id.

Hacienda served the notices of attachment shortly after 11:00 a.m., at which time both jewelry stores were closed. Thus, if the Jeopardy Assessments were properly issued, the attachment was

13

perfected because Hacienda had constructive possession of the personal property in the Old San Juan and the El Conquistador stores prior to the filing of the bankruptcy petition.

Nonetheless, Abislaiman retained an interest in the attached property, which interest became property of the estate when the bankruptcy petition was filed.  See <u>U.S. v. Whiting Pools, Inc.</u>, 462 U.S. 198, 204 (1983).  See also <u>A&J Auto Sales, Inc. v. U.S.</u>, 223 B.R. 839, 842 (D.N.H. 1998).

The automatic stay prohibits acts to obtain possession of property of the estate or to exercise control over it.  11 U.S.C. § 362(a)(3).  The Court concludes, however, that Hacienda's cataloging and inventory of the attached property, which continued for one hour and nineteen minutes postpetition, prior to the Court's hearing, did not violate the automatic stay because it did not change the nature of Hacienda's possession from constructive to physical.  Hacienda's actual physical possession of $500,000.00 in cost value of jewelry pieces was authorized by the Court and accordingly did not violate the automatic stay.

<u>Preference</u>

The Bankruptcy Code provides for recovery of preferential transfers in §547(b):

> (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property-
>
> > (1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made-

(A) on or within 90 days before the date of the filing of the petition; or
(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if-

(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

At issue in this case, is Abislaiman's solvency. The Bankruptcy Code defines "insolvent" as "with reference to an entity . . ., financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation . . ." 11 U.S.C. § 101(32). The Court concludes that there is a genuine issue of material fact as to whether Abislaiman is insolvent.

Hacienda contends that Abislaiman admitted solvency at the § 341 meeting of creditors, by stating that the companies are up to date with their payments to creditors. As Abislaiman argues, however, this did not take into account any debt owed to Hacienda.

15

Abislaiman disclosed in its schedules that it owed an unknown amount to Hacienda for 2000, 2001 and 2002 excise and sales taxes. Abislaiman's financial statement of December 18, 2003, shows a net worth of $350,409.55. Hacienda claimed a deficiency amount of $1,438,738.71. If the financial statement and the deficiency amount is correct, then Abislaiman would appear to be insolvent. Moreover, if the entire amount of Hacienda's present claim, $6,717,426.76, is allowed and deducted from Abislaiman's net worth, the results would be more drastic. Thus, the solvency issue is directly dependent upon the final allowed amount of Hacienda's claim. Determination of the solvency issue will determine whether Hacienda's attachment constitutes a preference.

Conclusion

The Court concludes that Hacienda is not entitled to sovereign immunity. Hacienda's use of Abislaiman's d/b/a in addressing its various notices did not serve to defeat its attachments. From the evidence presented, the Court is unable to determine the reasonableness of Hacienda's Jeopardy Assessments. Likewise, the Court can not determine whether the individual defendants are entitled to qualified immunity. If the Jeopardy Assessments were properly issued, the Court concludes that the attachments were perfected prepetition and that they did not violate the automatic stay. There is a genuine issue of material fact as to Abislaiman's solvency and thus the Court is unable to determine whether the

attachments constituted a preference. For these reasons, Hacienda's motion to dismiss and/or for summary judgment will be denied.

### ORDER

WHEREFORE IT IS ORDERED that the motion to dismiss filed by the Department of Treasury for the Commonwealth of Puerto Rico and the individual defendants (dkt. #49), shall be, and it hereby is, DENIED.

SO ORDERED.

San Juan, Puerto Rico, this 30 day of June, 2005.

GERARDO A. CARLO
Chief, U.S. Bankruptcy Judge